## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH P. MOFFITT, | ) |
| | ) |
| Plaintiff, | ) Civil Action No.: |
| | ) |
| v. | ) |
| | ) |
| TUNKHANNOCK AREA SCHOOL | ) |
| DISTRICT, TUNKHANNOCK AREA | ) |
| SCHOOL DISTRICT BOARD OF | ) Jury Trial Demanded |
| SCHOOL DIRECTORS, PHILLIP | ) |
| FARR, WILLIAM R. WEIDNER, | ) |
| JOHN M. BURKE, FRANK P. GALICKI,) |
| WILLIAM PREBOLA, HOLLY | ) |
| ARNOLD, ROBERT J. PARRY, III and | ) |
| WILLIAM SWILLEY, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## COMPLAINT

Plaintiff, Joseph P. Moffitt, by the following Complaint, hereby sues the Defendants, Tunkhannock Area School District and the Tunkhannock Area School District Board of School Directors under 42 U.S.C. § 1983 for violations of the United States Constitution and other rights and privileges. As grounds therefore, Plaintiff alleges as follows:

## JURISDICTION AND VENUE

1.  The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 1343(4), as Plaintiff asserts claims arising under the Constitution and laws of United States.

2.  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) (2) because the events giving rise to the claims herein occurred within this judicial district.

3.  The Plaintiff, Joseph P. Moffitt, is a citizen of the United States and a resident of Wyoming County, Pennsylvania.

4.  At all times relevant to this lawsuit, the Plaintiff was employed by the Defendant School District for 11 years and was a tenured employee, having served as Principal of both the Evans Falls Elementary School and the Mill City Elementary School for six (6) years.  Prior to his employment as Principal of both schools, Mr. Moffitt served as the Vice-Principal for Tunkhannock Area High School for approximately two and one-half (2 ½) years.

5.  At all times relevant to this lawsuit, the Defendant, the Tunkhannock Area School District (hereinafter either "TASD" or "the School District") was a public educational system serving the citizens of several municipalities surrounding and including Tunkhannock, Wyoming

County, Pennsylvania, with its principal business address at 41 Philadelphia Avenue, Tunkhannock, PA 18657.

6. At all times relevant to this lawsuit, the Defendant, the Tunkhannock Area School District Board of School Directors (hereinafter either "the School Board" or "the School Directors"), was the governing body of the Tunkhannock Area School District, operating and existing under the authority of the Commonwealth of Pennsylvania with its principal business address at 41 Philadelphia Avenue, Tunkhannock, PA 18657.

7. At all times relevant to this lawsuit, the Defendant, Phillip Farr, was a member of the Defendant, the Tunkhannock Area School District Board of School Directors, with full supervisory authority. Farr, who resides at 171 Pan Meadow Lane, Mehoopany, PA 18629, is currently the Board President and is being both sued in his personal and business capacity for actions taken under the color of state law.

8. At all times relevant to this lawsuit, the Defendant, William R. Weidner, was a member of the Defendant, the Tunkhannock Area School District Board of School Directors, with full supervisory authority. Weidner, who resides at 144 Walnut Grove Lane, Tunkhannock, PA 18657, is currently the Board Vice-President and is

being both sued in his personal and business capacity for actions taken under the color of state law.

9. At all times relevant to this lawsuit, the Defendant, John M. Burke, was a member of the Defendant, the Tunkhannock Area School District Board of School Directors, with full supervisory authority. Burke, who resides at 48 Wyoming Avenue, Tunkhannock, PA 18657, is currently the Board Treasurer and is being both sued in his personal and business capacity for actions taken under the color of state law.

10. At all times relevant to this lawsuit, the Defendant, Frank P. Galicki, was the Acting Superintendent of the Defendant, the Tunkhannock Area School District Board of School Directors, with full supervisory authority. Galicki resides at 8 Park Street, Shickshinny, PA 18655, and is being both sued in his personal and business capacity for actions taken under the color of state law.

11. At all times relevant to this lawsuit, the Defendant, William Prebola Jr., was a member of the Defendant, the Tunkhannock Area School District Board of School Directors, with full supervisory authority. Prebola, who resides at 172 Prebola Lane, Tunkhannock, PA, 18657, is being both sued in his personal and business capacity for actions taken under the color of state law.

12.  At all times relevant to this lawsuit, the Defendant, Holly Arnold, was a member of the Defendant, the Tunkhannock Area School District Board of School Directors, with full supervisory authority.  Arnold, who resides at 3 Thunderbird Trail, Tunkhannock, PA 18657,  is being both sued in his personal and business capacity for actions taken under the color of state law.

13.  At all times relevant to this lawsuit, the Defendant, Robert J. Parry III, was a member of the Defendant, the Tunkhannock Area School District Board of School Directors, with full supervisory authority. Parry, who resides at 251 Billings Mill Road, Tunkhannock, PA 18657, is being both sued in his personal and business capacity for actions taken under the color of state law.

14.  At all times relevant to this lawsuit, the Defendant, William Swilley, was a member of the Defendant, the Tunkhannock Area School District Board of School Directors, with full supervisory authority.  Swilley, who resides at Swilley Lane, Mehoopany, PA  18629,  is being both sued in his personal and business capacity for actions taken under the color of state law.

15.  At all times relevant to this lawsuit, the contractual relationship of the parties hereto was governed by the Pennsylvania Public School

Code, the Regulations of the State Board of Education located in Volume 22 of the Pennsylvania Code, the Tunkhannock Area School District Board of School Directors own policies and rules, Basic Education Circulars (known as "BECs") of the Pennsylvania Department of Education, Act 93 of the Pennsylvania Code, Chapter 235-The Code of Professional Practice and Conduct for Educators can be found at 22 Pa. Code §§235.1 - 235.11, and relevant case law.

16.  At all times relevant to this lawsuit, the conduct and actions of the Plaintiff, Joseph P. Moffitt, was in complete compliance with, and not violative of, any of the provisions of the Pennsylvania Public School Code, the Regulations of the State Board of Education located in Volume 22 of the Pennsylvania Code, the policies and rules of the Tunkhannock Area School District Board of School Directors, Basic Education Circulars of the Pennsylvania Department of Education, Act 93 of the Pennsylvania Code or Chapter 235-The Code of Professional Practice and Conduct for Educators.

17.  In 2010, the Plaintiff was arrested for Driving Under the Influence (DUI) and was accepted into the Accelerated Rehabilitative Disposition (ARD) program in Wyoming County.  The Plaintiff successfully completed the ARD program and the conviction was removed from his

record.  As a result of the DUI arrest, the Plaintiff lost his driver's license for a period of time, but did not receive any adverse employment action from his Defendant employer.

18.  The Plaintiff was terminated from his employment by the Defendants  by letter dated September 12, 2016 on the basis of his having two (2) DUIs and a suspended driver's license although a driver's license is not a requirement in the job description of Principal.

19.  In the letter, the School District failed to adequately advise Mr. Moffitt of the cause for his proposed discharge in sufficient detail to enable him to fairly defend himself and prepare for the confrontation of witnesses adverse to the Plaintiff.

20.  The letter charging Mr. Moffitt with wrong doing and requesting the termination of his employment did not state the names of known witnesses nor a concise summary of the evidence to be used against the Plaintiff at the time of Hearing, as required by the Pennsylvania Public School Code, the Regulations of the State Board of Education located in Volume 22 of the Pennsylvania Code, Basic Education Circulars (known as "BECs") of the Pennsylvania Department of Education, Act 93 of the Pennsylvania Code, Chapter 235-The Code of Professional Practice and

Conduct for Educators can be found at 22 Pa. Code §§235.1 - 235.11, and relevant case law.

22.  The School District failed to adequately provide information that is necessary to Mr. Moffitt to defend himself of the charges against him.

23.  In Loudermill v. Cleveland Board of Education, 470 U.S. 532 (1985), the United States Supreme Court held that non-probationary civil servants had a property right to continued employment and such employment could not be denied to employees unless they were given an opportunity to hear and respond to the charges against them prior to being deprived of continued employment.  The underlying principle in Loudermill is that because dismissals often involve factual disputes, a hearing provides the employee an opportunity to explain and refute any conclusions the employer reached which caused the employee's discharge. See Loudermill, 470 U.S. at 545.

24.  In 2012, the Plaintiff was suspended without pay by the Defendants for 242 days on an unrelated issue relating to practice tests given to students.  After it was determined that the Plaintiff did not engage in any wrongdoing, the Plaintiff was reinstated to his position, without his back pay.  However, as the Plaintiff did not receive a Loudermill hearing prior to his suspension without pay, he filed a federal lawsuit

against the Defendants in 2013 for violation of his due process rights. In 2016, after a federal jury trial held before the Honorable Judge Malachy E. Mannion of the United States District Court for the Middle District of Pennsylvania sitting in Scranton, the Plaintiff was awarded his back pay, interest, attorney's fees and $40,000.00 in compensatory damages.

25. In 2014, the Plaintiff was arrested a second time for DUI. At that time, he notified his employer that he was an alcoholic and in treatment for the disease. The Plaintiff received no adverse action by the Defendants as a result of the second DUI for approximately 21 months. Just eight (8) days after the Defendants' Motion for Summary Judgment in the prior federal lawsuit was denied in part and scheduled to proceed to a jury trial, the Defendants suspended the Plaintiff from his employment *with pay*; then, just six (6) days after the federal court granted the Plaintiff's *Motion In Limine* to exclude the unrelated DUIs into evidence at the trial of the federal action, the Defendants suspended the Plaintiff *without pay*. Another employee of the Defendant has had two (2) DUIs and received no adverse action by the Defendants (until the employee violated court-ordered probation).

26. During a meeting on February 11, 2016 with representatives of the Defendants, the Plaintiff was told it was a <u>Loudermill</u> hearing and given the charges against him to terminate his employment with the School District. He was not provided with the evidence against him. The meeting failed to meet the minimum requirements of <u>Loudermill</u>.

27. The first day of the Plaintiff's termination hearing, which was scheduled for May 26, 2106, was held but then continued in order to provide Defendants with additional time to provide Plaintiff with the evidence against him in advance of the hearing as required by <u>Loudermill</u>. Defendants provided a list of witnesses prior to the next hearing but failed and refused to provide Plaintiff with any of the evidence to support the charges against him.

28. At no time prior to the commencement of the Plaintiff's termination hearing did the Defendants provide to the Plaintiff any details as to the evidence that would be relied upon by the School District to support their decision to suspend and then terminate Mr. Moffitt's employment. When requested by Plaintiff's counsel to provide Mr. Moffitt with information on the evidence to be used against him in the termination proceedings, the School District refused to provide any information. This unconstitutionally impeded and restricted the Plaintiff's

preparation for his termination hearing and his right to confront his accusers.

29. The Plaintiff was suspended without pay beginning on March 14, 2016, at which time he was effectively terminated since he was immediately deprived of his pay and did not have advance notice of the charges or evidence against him prior to the termination hearing to adequately prepare a defense.

30.    The Defendants notified the Plaintiff that he was formally terminated by letter dated September 12, 2016.

31.    Moreover, the Pennsylvania School Code at 24 P.S. § 11-1127 specifically requires that:

> "[b]efore any professional employe[e] having attained a status of permanent tenure is dismissed by the board of school directors, such board of school directors shall furnish such professional employe[e] with a detailed written statement of the charges upon which his or her proposed dismissal is based and shall conduct a hearing.  A written notice signed by the president and attested by the secretary of the board of school directors shall be forwarded by registered mail to the professional employe[e] setting forth the time and place when and where such professional employe[e] will be given an opportunity to be heard either in person or by counsel, or both, before the board of school directors and setting forth a detailed statement of the charges."

32. In the instant case, the procedural requirements were not followed as the letter was signed by the acting superintendent and attested to by the board president. The Defendant school district failed and/or refused

to follow procedural requirements when terminating the Plaintiff, a tenured employee.

33.  At the contested Suspension/Termination hearing, the School District failed to present sufficient evidence to support the charges listed as grounds for Mr. Moffitt's termination.

34.  School Board members and School Administrators act under color of state law so whenever a liberty or property interest of an employee is involved, the employee must be given the basic due process rights guaranteed by the United States Constitution.

35.  In the instant case, the Plaintiff has a liberty right to a good reputation so that the accusations made in the Suspension/Termination proceeding stigmatized Mr. Moffitt and interfered with his liberty interest. The property right of Mr. Moffitt was also implicated because it concerns his expectation of employment so that any action that altered this expectation interfered with his property interest.

36.  The Defendants' actions, inactions and activities against the Plaintiff were an inappropriate use of School District resources and constituted wrongful acts.

37.    The Plaintiff exhausted his Pennsylvania administrative remedies when the Pennsylvania Commonwealth Court upheld his termination by a decision and order dated August 13, 2018.

## COUNT I

### (Violation of Plaintiff's Due Process Rights and Rights to Equal Access to Justice)

38.  Plaintiff realleges paragraphs one (1) through 37 as if fully stated herein.

39. Defendants' actions as hereinbefore described violated Mr. Moffitt's Due Process rights under the Fourteenth Amendment to the United States Constitution under 42 U.S.C. 1983.

40.  By such conduct of the Defendants, the Plaintiff was denied notice of accusation and the right to confront his accusers.

41.  The Plaintiff was deprived of procedural due process under 42 U.S.C. §1983 by first suspending him without pay and then terminating his employment and was further deprived of significant liberty and property interests under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

## COUNT II
### (Violation of Plaintiff's Due Process Rights
### and Rights to Equal Access to Justice)

42.  Plaintiff realleges paragraphs one (1) through 41 as if fully stated

herein.

43. Section 1122 of the Pennsylvania Public School Code reads:

> "Section 1122.  Causes for Termination of Contract.--(a)  The only
> valid causes for termination of a contract heretofore or hereafter
> entered into with a professional employe shall be immorality;
> incompetency; unsatisfactory teaching performance based on two
> (2) consecutive ratings of the employe's teaching performance that
> are to include classroom observations, not less than four (4)
> months apart, in which the employe's teaching performance is
> rated as unsatisfactory; intemperance; cruelty; persistent
> negligence in the performance of duties; wilful neglect of duties;
> physical or mental disability as documented by competent medical
> evidence, which after reasonable accommodation of such
> disability as required by law substantially interferes with the
> employe's ability to perform the essential functions of his
> employment; advocation of or participating in un-American or
> subversive doctrines; conviction of a felony or acceptance of a
> guilty plea or nolo contendere therefor; persistent and wilful
> violation of or failure to comply with school laws of this
> Commonwealth, including official directives and established
> policy of the board of directors; on the part of the professional
> employe: Provided, That boards of school directors may
> terminate the service of any professional employe who has
> attained to the age of sixty-two except a professional employe who
> is a member of the old age and survivors insurance system
> pursuant to the provisions of the act, approved the first day of
> June, one thousand nine hundred fifty-six (Pamphlet Laws 1973).
> In such case the board may terminate the service of any such
> professional employe at the age of sixty-five or at the age at which
> the employe becomes eligible to receive full benefits under the
> Federal Social Security Act.

(b)  Nothing within the foregoing enumeration of causes in subsection (a), shall be interpreted to conflict with the retirement of professional employes upon proper evidence of disability, or the election by professional employes to retire during the period of voluntary retirement, or the authority of the board of school directors to require professional employes to retire during said period of voluntary retirement, or the compulsion on the part of professional employes to retire at the attainment of age seventy."

44.   Loudermill requires "a pretermination opportunity to respond, coupled with post-termination administrative [or judicial] procedures." Morton v. Beyer, 822 F.2d 364, 367 (3d Cir.1987) (quoting Loudermill, 470 U.S. at 546, 105 S. Ct. 1487). The pretermination hearing must at least entail: 1) "oral or written notice of the charges," 2) "an explanation of the employer's evidence," and 3) "an opportunity for the employee to tell his side of the story." Loudermill, 470 U.S. at 545, 105 S.Ct. 1487.

45.  Defendants' actions as hereinbefore described violated Mr. Moffitt's Due Process rights under the Fourteenth Amendment to the United States Constitution under 42 U.S.C. 1983.

46.  The Plaintiff was deprived of procedural due process under 42 U.S.C. §1983 by the Defendants' first suspending him without pay, then terminating him, and he was further deprived of significant liberty and property interests under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, as a result of the School

Administration's intentional violations of both Loudermill and the Pennsylvania Public School Code, as hereinbefore alleged.

## COUNT III
### (First Amendment Retaliation)

47.  Plaintiff realleges paragraphs one (1) through 46 as if fully stated herein.

48.  All acts of the Defendants, their agents, servants, employees, or persons acting at their behest or direction, as alleged herein, were done under the color and pretense of state law.

49. Plaintiff enjoys the right to freedom of expression as guaranteed by the First Amendment to the United States Constitution.

50.  Mr. Moffitt believes, and therefore avers, that he was terminated in unlawful retaliation against him for asserting his rights in the filing of the prior, unrelated federal lawsuit, as alleged above.  This position is supported by the timeline in the federal lawsuit and the timeline when Mr. Moffitt received negative treatment from the school.

51.  The Plaintiff asserts that the School District failed to prove, as required before a district can dismiss a professional employee on grounds of immorality that his DUI conviction offended the morals of the community and was not in retribution for the Petitioner's actions in

an unrelated federal civil rights suit, in which the Plaintiff Moffitt prevailed.

52. Shortly after successes in the prosecution of his prior, unrelated federal lawsuit as set forth hereinabove, the Plaintiff began receiving retaliatory scrutiny in all other aspects of his employment with the School District, which ultimately led to the termination of his position.

53. The Defendants, acting under color of state law, violated Plaintiff's First Amendment rights by taking actions adverse to Plaintiff as a direct and proximate result of and in retaliation for Plaintiff's exercise of his First Amendment rights.

54. The Defendants acted knowingly, willfully and/or maliciously, and with the specific intent to deprive Plaintiff of his constitutional rights and/or with deliberate indifference to Plaintiff's constitutional rights.

55. The Defendants' actions in retaliation for Plaintiff's exercise of his First Amendment rights are sufficient to chill or silence a person of ordinary firmness from future First Amendment activities.

56. As direct and proximate result of these violations of his constitutional rights, Plaintiff suffered substantial damages, including emotional distress, harassment, personal humiliation, and embarrassment.

## COUNT IV
### (Breach of Contract)

57.  Plaintiff realleges paragraphs one (1) through 56 as if fully stated herein.

58.  A valid contract existed between the Plaintiff and the Tunkhannock Area School District, as described in Pennsylvania Education Act 93.

59. The Plaintiff performed under the contract fully and in good faith at all times.

60. The Defendants' suspension of the Plaintiff without pay constituted a breach of the contract between the parties.

61.  Mr. Moffitt did not violate any of the serious offenses set forth in Chapter 235-The Code of Professional Practice and Conduct for Educators (22 Pa. Code §§235.1 - 235.11) and the sole basis for his termination was for his second arrest for Driving Under the Influence, which is not one of the enumerated offenses for termination under the State Code.

62.  In addition, the Plaintiff's termination was inconsistent with the past practice and treatment he previously received by the Defendants when the Plaintiff's driver's license was suspended.  The Defendants made no claim at that time that he was unable to complete his work requirements.

63. The Plaintiff never received a negative review from the Defendants for the period he was without a driver's license.

64. Ms. Felker, who replaced Mr. Moffitt as principal (and testified against him at the termination hearing), was unable to drive for medical reasons – but she was accommodated by the Defendants by being provided with a driver on the rare instances when she needed to be at another school for an emergency.

65. The Plaintiff, Mr. Moffitt, received no such accommodation from the Defendants, who instead used the suspension of the Plaintiff's driver's license as a ground for his termination.

66. The Plaintiff's termination of his employment with the School District was a breach of the contract between the parties.

67. The Plaintiff's termination of his employment with the School District was a violation of the School District's past practices.

68. The failure of the Defendants to abide by the contract caused the Plaintiff to incur expenses, legal fees and costs, suffer unnecessary delay and hardship, and otherwise sustain damages that would have been avoided if the Defendants had promptly and reasonably honored and complied with its statutory and contractual obligations.

69. As a direct and proximate result of the Defendants' aforementioned conduct, the Plaintiff still has not received any payment from the time of his suspension on March 14, 2016, as a result of the breach of the employment contract.

70. As a result of the Defendants' breach of their duties under the foregoing employment contract and Pennsylvania law, the Plaintiff has suffered actual and consequential damages.

71. At all times relevant hereto the Plaintiff has performed his obligations under the contract.

72. In suspending the Plaintiff without pay as hereinbefore described, the Defendants have breached the terms of the agreement between Defendants and the Plaintiff.

## COUNT V
### (Wrongful Suspension and Termination in Violation of the Pennsylvania School Code and Public Policy)

73. Plaintiff realleges paragraphs one (1) through 72 as if fully stated herein.

74. At all times herein mentioned, the Plaintiff was fully competent to perform the duties to which he was assigned.

75. The Defendants failed to comply with the mandatory procedures set forth in the School Code when the District terminated Mr. Moffitt's

employment as a Principal without a proper <u>Loudermill</u> hearing, and then belatedly held a hearing later which also did not comply with the School Code and <u>Loudermill</u>.

76.    The Defendants failure to comply with the procedural safeguards of the School Code constituted a Due Process Clause violation of the United States (U.S.) Constitution.

77.  As a matter of both fact and law, the Defendants' reasons for terminating Mr. Moffitt's employment do not meet the strict requirements for a lawful dismissal and/or relied on matters that were irrelevant to his performance as Principal.

78.  Mr. Moffitt did not violate any of the serious offenses set forth in Chapter 235-The Code of Professional Practice and Conduct for Educators (22 Pa. Code §§235.1 - 235.11) and the sole basis for his termination was for his second arrest for Driving Under the Influence, which is not one of the enumerated offenses under the State Code.

79. The Defendants violated the Plaintiff's rights under the Due Process clause of the Fourteenth Amendment, his liberty and property rights and the Plaintiff's rights to substantive and procedural due process, and suspended the Plaintiff without pay, then terminated him, in violation of public policy.

80.  As a result of the Defendants' violation of the Plaintiff's rights under the Due Process clause of the Fourteenth Amendment, his liberty and property rights and the Plaintiff's rights to substantive and procedural due process, the Plaintiff has suffered actual and consequential damages.

81. Said suspension and discrimination violated public policy, United States and Pennsylvania common law and the Plaintiff's constitutional rights under both the United States and Pennsylvania Constitutions.

### PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES SO TRIABLE

### RELIEF REQUESTED

1)      To enter judgment in favor of the Plaintiff and against the Defendants;

2)      To award Back-pay including seniority, plus 6% interest for the income for which the Plaintiff was wrongfully deprived, from March 14, 2016  and accruing thereafter;

3)      To award Front-pay for the income for which the Plaintiff will wrongfully be deprived, from March 14, 2016 and accruing thereafter;

4)      To award all vacation, sick-time, personal and optional holidays that the Plaintiff lost because of the actions of the Defendants;

5)      To award benefits of his employment, including retirement health insurance costs;

6)      To Order the removal of all references to the unsupported allegations of wrongdoing from the Plaintiff's personnel file;

7)      To award reimbursement for reasonable attorney's fees and costs already paid by the Plaintiff out-of-pocket;

8)      Make whole with the Pennsylvania State Employees Retirement System;

9)      To Order that the Defendants comply with Section 1130 of the Pennsylvania School Code that states "In all cases where the final decision is in favor of the professional employe, the charges made shall be physically expunged from the records of the board of school directors, but a complete official transcript of the records of the hearing shall be delivered to the one against whom the charges were made. In all such cases there shall be no abatement of salary or compensation";

10)     Imposition of further attorney's fees upon the Defendants for reasonable fees and expenses necessary to prosecute the instant action;

11)     Compensatory damages for harm to the Plaintiff's reputation;

12)     Punitive damages for emotional distress and the violation and deprivation of the Plaintiff's constitutionally-protected due process rights;

13)     Compensation for loss of income caused by his suspension without pay;

14)     Compensation for irreparable harm to the Plaintiff's credit;

15)     Compensatory damages in a sum in excess of $75,000.00, along with the costs of this action, and such other relief as the court deems proper.

16)     To grant such further relief as may be just under the circumstances.

Respectfully submitted,

ANDREW J. KATSOCK, III
Attorney for Plaintiff, Joseph P. Moffitt
15 Sunrise Drive, Wilkes-Barre, PA 18705
(570) 829-5884